UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                   :

FAUST HARRISON PIANOS CORP., GRAND    :
DESIGN PIANO RESTORATION CORP.,          :
IRVING FAUST, JOSHUA FAUST, DORIAN    :
FAUST and SARA FAUST,                     :
                                   :

           Plaintiffs,               :             **<u>OPINION & ORDER</u>**
                                   :

       - against -                 :
                                   :       09 Civ. 6707 (ER)

ALLEGRO PIANOS, LLC, BUKAI PROPERTIES,:
LLC, ORI BUKAI and REBECCA BUKAI,    :
                                   :

        Defendants – Counterclaimants.   :
                                   :

       - against -                 :
                                   :

HARRISON FAUST ACQUISITION CORP. and  :
SARA FAUST,                         :
                                   :

        Counterclaim Defendants.       :
                                   :
                                   :
-------------------------------------------------------------x

<u>RAMOS, D.J.</u>:

      This action arises out of a family dispute involving several family-owned businesses and

related transactions.  Before the Court are cross-motions for partial summary judgment pursuant

to Fed. R. Civ. P. 56.  Docs. 130, 150, 160.  For the reasons stated herein, Plaintiffs' motion is

GRANTED in part and DENIED in part and Defendants' motion is GRANTED in part and

DENIED in part.

## I.  General Background[1]

### a.  The Parties

Plaintiff Irving Faust is a managing director of Plaintiff Faust Harrison Pianos, Inc.

("FHP").  I. Faust Opp. Decl. ¶ 1.[2]  FHP is in the business of acquiring, restoring, servicing and

selling high-end pianos.  Nelson Opp. Aff., Ex. B at 3.  Irving Faust is also part owner and

President of Plaintiff Grand Design Piano Restoration Corporation ("Grand Design"), an affiliate

of FHP that performs high-end restoration of vintage pianos, part owner and Vice-President of

Defendant Bukai Properties, LLC ("Bukai Properties"), and part owner and President of

Counterclaim Defendant Harrison Faust Acquisition Corporation ("FHC").  I. Faust Opp. Decl.

¶¶ 1, 2.  Irving Faust's primary business partner is his wife, Plaintiff Sara Faust.  *Id*. ¶ 2.  Joshua

Faust, their son, is a co-owner and co-manager of Grand Design.  *Id*.

Defendant Ori Bukai is the son-in-law of Irving and Sara Faust and is married to their

daughter, Defendant Rebecca Bukai.  *Id*. ¶¶ 3- 4.  Ori Bukai is the owner and manager of

Defendant Allegro Pianos, LLC ("Allegro Pianos") and co-owner and Chief Executive Officer

("CEO") of Bukai Properties.  *Id*. ¶ 5; Nelson Aff., Ex. C.  Allegro Pianos is in the retail piano

---

[1] Although this Opinion does not include a summary of all facts or references to all of the parties' arguments in connection with the instant motions, the Court has considered *all* of the legal arguments asserted by the parties and *all* of the relevant, material facts contained in the parties' submissions.

[2] Citations to "Pls.' 56.1 ¶_" refers to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts, Doc. 149, "Pls.' 56.1 Resp. ¶_" refers to Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, Doc. 163, "Defs.' 56.1 ¶_" refers to Defendants' Local Rule 56.1 Statements of Undisputed Material Facts, Doc. 132, and "Defs.' Resp. 56.1 ¶_" refers to Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts, Doc. 167.  "I. Faust Decl." refers to the Declaration of Irving Faust in Support of Plaintiffs' Motion for Summary Judgment.  Doc. 151.  "I. Faust Opp. Decl." refers to the Declaration of Irving Faust in Opposition to Defendants' Motion for Summary Judgment.  Doc. 151.  "Nelson Aff." refers to the Affirmation of Jonathan B. Nelson in Support of Defendants' Motion for Summary Judgment.  Doc. 131.  "Nelson Opp. Aff." refers to the Affirmation of Jonathan B. Nelson in Opposition to Plaintiffs' Motion for Summary Judgment.  Doc. 165.  "O. Bukai Opp. Decl." refers to the Declaration of Ori Bukai in Opposition to Plaintiffs' Motion for Summary Judgment.  Doc. 168.  "R. Bukai Decl." refers to the Declaration of Rebecca Bukai in Opposition to Plaintiffs' Motion for Summary Judgment.  Doc. 166.

business and Bukai Properties is a real estate investment company that owns a property in Stamford, Connecticut.  I. Faust Opp. Decl. ¶¶ 5-6.  The property in Stamford serves as Allegro Pianos' showroom and is home to a music school owned and managed by Ori Bukai.  *Id*.

    b.  **The Parties' Agreements**

Over the years, the parties entered into various transactions, including alleged loans and profit-sharing agreements, some of which are the subject of the instant dispute.  Nelson Opp. Aff., Ex. B at 4.  The Court outlines the main disputed agreements and transactions below; however, there are additional disputes addressed in this Opinion which are not summarized below.

        i.  Cooperation Agreements

At some point between 1998 and 2002, FHP and Allegro Pianos first entered into oral Cooperation Agreements[3] pursuant to which the two companies agreed to share profits, cross-refer customers, place pianos for sale on consignment in each other's showrooms, and reimburse the consignor for the costs of pianos sold on consignment.  Pls.' 56.1 ¶ 18; Defs.' Resp. 56.1 ¶ 18.  The parties now accuse each other of breaching the Cooperation Agreements beginning in approximately 2006 or 2007.  Pls.' 56.1 ¶ 20; Defs.' Resp. 56.1 ¶ 19.

        ii.  Cessation Agreement

Defendants allege that as part of the 2007, 2008 and 2009 iterations of the Cooperation Agreements, the parties entered into an oral agreement providing the parties with various rights in the event of termination of the business relationship (the "Cessation Agreement").  *See generally* O. Bukai Opp. Decl. ¶¶ 84-85.  Defendants further allege that the Cessation Agreement

---

[3] Plaintiffs characterize the Cooperation Agreements as a single agreement that lasted several years, *see* Pls.' 56.1 ¶ 18; however, Defendants argue that the Cooperation Agreements were entered into on a yearly basis.  Defs.' Resp. 56.1 ¶ 19.  Whether there were multiple Cooperation Agreements or a single agreement is not at issue in this motion.

was a necessary and material part of the profit sharing portion of the Cooperation Agreements. *Id*. ¶¶ 84-86.  As part of the Cessation Agreement, Defendants argue that FHP was prohibited from directly contacting the Mason & Hamlin piano company and soliciting them to stop selling pianos to Allegro.  *Id*. ¶ 87.  Defendants allege that FHP violated that provision of the Cessation Agreement.  *Id*. ¶ 88.  Plaintiffs dispute the existence of the Cessation Agreement.  I. Faust Decl. ¶ 29.

On December 23, 2007, Irving Faust sent Ori Bukai an email attaching a document titled "Summary of a Draft Deal," and with the subject line "very latest with highlights."  I. Faust Decl., Ex. 16.  The document purports to set the rights of the parties upon termination of the business relationship, including with respect to the Mason & Hamline line, and states, "This Summary shall become effective upon execution by all parties."  *Id*.  The parties did not sign this document.  Defs.' Resp. 56.1 ¶ 26.

### iii.  Boat Agreements

On January 24, 2004, Irving Faust and Ori and Rebecca Bukai entered into a written boat loan agreement ("Boat Loan Agreement") for $150,000.000 dollars.  Faust signed the agreement as "Lender" and the Bukais signed as "Borrower[s]."  I. Faust Decl. ¶ 7, Ex.1.  The Boat Loan Agreement provides for interest payments of $1,000.00 dollars per year beginning December 1, 2004 and payment of the principal sum of $150,000.00 dollars on January 29, 2009.  The agreement also includes a provision on "Security" which states, "The 59-foot Carver motor yacht to be purchased with these funds shall serve as collateral for this loan."  *Id*.

According to Defendants, although the Boat Loan Agreement was signed by the parties, it was subsequently voided by the parties' actions and agreements.  Defs.' Resp. 56.1 ¶ 1.  No

4

boat was purchased under the Boat Loan Agreement.  Instead, Ori Bukai asserts that the parties formed an oral agreement ("New Boat Agreement") the following month, in February 2004.  O. Bukai Opp. Decl. ¶ 116.  According to Bukai, pursuant to the New Boat Agreement the Fausts agreed to purchase the boat as co-owners with the Bukais, and not as collateral interest holders. *Id*. ¶¶ 117-18.  Bukai further alleges that under the New Boat Agreement, each party invested approximately $150,000.00 dollars in the transaction and the parties took out a $700,000 dollar loan with Wachovia Bank.  *Id*. ¶ 120.  Plaintiffs dispute that the Boat Loan Agreement was ever terminated.  I. Faust Opp. Decl. ¶¶ 11-12.

Defendants proffered a Marine/Note and Security Agreement ("Boat Note") for a vessel named "Blue Jam," dated March 10, 2004 and in the amount of $700,000.00 dollars, and signed by Ori and Rebecca Bukai as "Borrower[s]" and Irving and Sara Faust as "Co-Borrower[s]."  O. Bukai Opp. Decl., Ex. 11.  According to the Boat Note, Irving and Sara Faust are "equally liable for repayment of [the] loan."  *Id*., Ex. 11.

On October 16, 2005, Rebecca Bukai wrote a check to Irving Faust for $2,000.00 dollars and made a notation on the check that the payment was for "boat loan interest:  2004 & 2005."  I. Faust Decl., Ex. 6.  According to Rebecca Bukai, Irving Faust specifically asked her to write him a check with the notation for "boat loan interest:  2004 & 2005."  R. Bukai Decl. ¶ 34.  She did not intend to bind herself, or her husband, to any loan obligation by writing that check.  *Id*. ¶ 36.

A Certificate of Documentation issued by the United States Coast Guard, National Vessel Documentation Center, dated February 25, 2010, lists Blue Jam as being owned by Ori and Rebecca Bukai and Irving and Sara Faust.  O. Bukai Opp. Decl., Ex. 10.

### iv.  Bukai Properties Sale and Withdrawal Agreement

Ori and Rebecca Bukai were the initial owners of Bukai Properites.  I. Faust Opp. Decl. ¶

6.  In 2007, Irving Faust and Ori Bukai entered into negotiations to finance the construction of

Allegro Pianos' showroom on Bukai Properties' land in Stamford, Connecticut.  *Id*. ¶ 8.

On June 15, 2007, pursuant to a Sale and Withdrawal Agreement, Rebecca Bukai sold

her shares of Bukai Properties to Irving Faust for the purchase price of "One ($1.00) Dollar and

other valuable consideration."  *Id*. ¶ 13; I. Faust Opp. Decl., Ex. 4.  The agreement further states:

> This Agreement and the Amended and Restated Operating Agreement, including
> the exhibits and schedules hereto and thereto, contain the entire understanding of
> the parties hereto with respect to the subject matter hereof and there are no
> restrictions, representations, warranties, covenants or undertakings of the parties
> hereto except those expressly set forth herein.

I. Faust Opp. Decl., Ex. 4.

### v.  Bukai Properties Operating Agreement

On June 15, 2007, Irving Faust and Ori Bukai executed an Operating Agreement for

Bukai Properties, which was later re-executed as the Amended and Restated Operating

Agreement (the "Operating Agreement") in August 2008.  Pls.' Resp. 56.1 ¶ 1; Nelson Aff., Ex.

C.  The Operating Agreement is governed by the laws of the State of Connecticut and states:

- Ori Bukai and Irving Faust are the "Initial Members" of a "Multi-Member:
  Limited Liability Company."  Ori Bukai is CEO of Bukai Properties and
  Irving Faust is Executive Vice President.  Article 1; § 4.4.

- "No Member or Economic Interest Owner shall have priority over any other
  Member or Economic Interest Owner, either as to the return of Capital
  Contributions or as to Net Profits, Net Losses or distributions; provided that
  this Section shall not apply to repayment of loans (as distinguished from
  Capital Contributions) which a Member has made to the Company."  § 6:3.

- "No Member shall be entitled to interest on such Member's Capital
  Contribution or Capital Account, and no Member shall have the right to

        withdraw or to demand or receive a return of such Member's Capital Contribution, except as otherwise specifically provided for herein."  § 8.6.

- "Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company by agreement with the Company, except that loans by any Member to the Company shall not be considered contributions to capital of the Company and shall not increase a Member's Capital Account."  § 8.7.

- "This Operating Agreement and the Articles constitute the complete and exclusive statement of agreement among the Members with respect to the subject matter hereof.  This Operating Agreement and the Articles replace and supersede all prior and contemporaneous agreements by and among the Members or any of them with respect to the subject matter hereof.  This Operating Agreement and the Articles supersede all prior written and oral statements, and no representation, statement, or condition or warranty with respect to the subject matter hereof and not contained in this Operating Agreement or the Articles will be binding on the Members or have any force or effect whatsoever."  § 15.1.

Nelson Aff., Ex. C.  Exhibit B to the Operating Agreement states that Ori Bukai has an eighty-five percent interest in Bukai Properties and Irving Faust has a fifteen percent interest.  *Id.*

        Exhibit D to the Operating Agreement states that Bukai Properties expects to complete construction of a commercial space on its Long Ridge Road property and receive a Certificate of Occupancy for such property on or about April 1, 2008.  *Id.*  Exhibit D also states the following:

- "Decision Date" is (90) ninety days beyond the date that the Certificate of Occupancy is received;

- Option 1: "On the Decision Date, or at any time prior to the Decision Date, Ori Bukai is hereby granted the option to purchase from Irving Faust all of Irving Faust's shares in this LLC.  The price for this purchase shall be the entire amount of capital invested by Irving Faust in this LLC up until and including the date that the option is exercised, plus 9% simple interest compounded annually on that capital.  This simple interest shall accrue on each dollar of capital invested by Irving Faust from the day that dollar was invested until the day that this option is exercised (if it is exercised).  Since $225,000 is being invested this day, the 9% simple interest due on this amount shall accrue from this day and shall begin to compound one year from this day.  Further capital which is likely to be invested by Irving Faust as part of

his contribution to construction costs, shall accrue interest from the date or dates that this further capital is invested and begin to compound one year following the further investment date or dates.   This option expires at midnight on the Decision Date;"

- Option 2:  "Regardless of whether or not Ori Bukai has exercised his rights under Option 1, above, at any time between the date that the [Certificate of Occupancy] is obtained and the Decision Date, he has the option to require Irving Faust to purchase a number of shares in the LLC sufficient to bring his entire ownership of shares to exactly 35%.  If on the date that this option is exercised (should it be exercised), Irving Faust owns the same 19.90% of shares that he owns presently, he would be required to purchase an additional 15.10% of the shares; if on the date that this option is exercised (should it be exercised), Irving Faust owns no shares in this LLC, he would be required to purchase 35% of the shares.  This option expires at midnight on the Decision Date."

*Id*.  During his deposition on October 3, 2011, Irving Faust admitted that he participated in drafting Exhibit D to the Operating Agreement.  Nelson Aff., Ex. D, Tr. 71:10-23.  Plaintiffs now allege that the $225,000.00 dollars provided pursuant to Exhibit D to the Operating Agreement was a loan to Defendants, and not an equity investment in Bukai Properties.  I. Faust. Opp. Decl. ¶¶ 17-18.  Defendants argue that pursuant to the terms of the document it was an equity investment.  *Id*. ¶ 17.

### vi.  Sublicense Agreement

The Bosendorfer, Bluthner, and Steingraeber companies distribute pianos in the United States through a network of authorized dealers and each dealer receives an exclusive geographic territory.  *See generally* Nelson Opp. Aff., Ex. B at 4; O. Bukai Opp. Decl. ¶ 138.  Allegro Pianos entered into licensing agreements with Bosendorfer, Bluthner and Steingraeber.  *Id*.; O. Bukai Opp. Decl. ¶ 137.

On September 16, 2008, Allegro Pianos and FHP entered into a written sublicense agreement ("Sublicense Agreement") which granted FHP the right to display and sell

8

Bosendorfer, Bluthner and Steingraeber pianos.  I. Faust Decl., Ex. 10; Defs.' Resp. 56.1 ¶ 27.

Pursuant to the Sublicense Agreement, Allegro Piano claims that it has the right to terminate

FHP's right to sell and display the Bosendorfer, Bluthner and Steingraeber pianos at any time for

any reason.  Defs.' Resp. 56.1 ¶ 28.  Specifically, the Sublicence Agreement states:  "[D]uring

the Allegro Exclusivity Period [, FHP] will display and sell these brands of pianos solely at the

pleasure of Allegro Pianos; it will release any and all of these pianos back to Allegro Pianos at

any time and for any reason upon request."  I. Faust Decl., Ex. 10, ¶ 3.  The agreement also states

that Allegro Pianos may terminate the contract "at any time so long as it provides [FHP] ninety

(90) days['] notice."  *Id*. at 2.

On April 2, 2009, after the breakdown of the business relationship between the parties,

Ori Bukai, via email, instructed FHP to "immediately remove" all Bosendorfer, Bluthner, and

Steingraeber pianos from FHP's showroom, stating:

> Whereas [FHP] and Allegro Pianos had a cooperating agreement until this date,
> and whereas this cooperative agreement was the basis for Allegro['s] willingness,
> according to its right (per a separate agreement between Allegro Pianos and FHP
> [, the Sublicense Agreement]) to place Bosendorfer, Steingraeber and Bluthner
> pianos at [FHP's] 58th [S]treet store in Manhattan, I would kindly request that
> you immediately remove any pianos of these brands that are owned by [FHP] or
> its holding company Faust Harrison Acquisition from said Manhattan showroom.

I. Faust Decl., Ex. 11.

On May 29, 2009, counsel for Allegro Pianos sent a letter to FHP stating, "Allegro

Pianos hereby terminates the [Sublicense] [A]greement effective ninety (90) days from the date

hereof (August 28, 2009)."  I. Faust Decl., Ex. 13.  The letter also demanded that FHP

immediately cease and desist from placing, showing, or selling Bosendorfer, Bluthner, and

Steingraeber pianos.  *Id*.  FHP did not comply with all these directives.  Nelson Opp. Aff., Ex. B

9

at 8.

vii.  <u>Bluthner Piano</u>

FHP, or its agents, are in possession of a Bluthner piano with serial number 151 286 (the "Bluthner piano").  Pls.' Resp. 56.1 ¶ 13.  Defendants allege that Allegro Pianos, as an authorized Bluthner dealer, obtained this Bluthner piano on consignment from Bluthner on June 8, 2006.  Defs.' 56.1 ¶ 14.  According to Defendants, FHP is not the owner of the piano and it belongs to Bluthner.  *Id.* ¶¶ 15-17.

Plaintiffs dispute this assertion and claim that FHP rightfully received the piano from Allegro Pianos as payment of a debt.  Pls.' Resp. 56.1 ¶¶ 15-17.  An e-mail dated December 17, 2008, from Ori Bukai to Joshua Faust states, "[M]y original estimate of the amount Allegro will owe FHP for the summ[a]ry of 06-07 was extremely on the mark, and equal to the cost of a Bluthner 4 that was transferred from [A]llegro to FHP early 08 as a future payment against these expected monies (about 38k)."  I. Faust Opp. Decl., Ex. 12.

c.  **Procedural History**

Plaintiffs commenced this action on July 29, 2009 and the case was originally assigned to Judge Kenneth M. Karas.  Doc. 1.  On September 11, 2009, Allegro Pianos sought a preliminary injunction pursuant to Section 43(a) of the Lanham Act to prevent, *inter alia*, FHP from selling Bosendorfer and Bluthner pianos and to order FHP to remove from its website references to Bosendorfer and Bluthner pianos.  *See* Docs. 11, 26.  On April 27, 2010, Judge Karas ruled that FHP could continue selling the Bosendorfer and Bluthner pianos at issue, but ordered FHP to refrain from making representations that it was an authorized exclusive dealer of Bosendorfer

and Bluthner.  Nelson Opp. Aff., Ex. B at 21-30.  On September 29, 2010, Defendants filed an

Amended Answer with Counterclaims ("Amended Answer").  Doc. 67.

On January 6, 2012, the case was reassigned to the undersigned.  Doc. 121.  On August

13, 2012, Defendants moved for summary judgment to dismiss Plaintiffs' breach of contract and

unjust enrichment claims under the Operating Agreement (Claims Five and Six).  Defendants

also moved for summary judgment on their counterclaim requesting the return of the Bluthner

piano (Counterclaim Six).  Doc. 130.  On August 16, 2012, Plaintiffs filed a cross-motion for

summary judgment seeking to dismiss Defendants' counterclaims for cancelation of consignment

privileges (First Counterclaim), breach of the Sublicense Agreement (Second and Third

Counterclaims), breach of the Cessation Agreement (Fourth Counterclaim), tortious interference

with contract (Fifth Counterclaim), slander of title (Ninth Counterclaim), and breach of the Boat

Note (Twelfth Counterclaim).  Plaintiffs also moved for summary judgment as to their claims for

breach of the Cooperation Agreements (First and Second Claims) and breach of the Boat Loan

Agreement (Seventh Claim).  Docs. 150, 160.  Plaintiffs have since withdrawn their request for

summary judgment on the Cooperation Agreements.  Pls.' Reply Mem. L. 10.  On August 21,

2012, Plaintiffs filed a Second Amended Complaint ("SAC").  Doc. 156.[4]

## II.  Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a

reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free*

---

[4] Discussion of Plaintiffs' causes of action relates to the claims as designated in the Second Amended Complaint.

*Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)) (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

**III. Defendants' Motion for Summary Judgment**

Defendants have moved for summary judgment on Plaintiffs' breach of contract and unjust enrichment claims under the Bukai Properties Operating Agreement (Claims Five and Six), and on their sixth counterclaim involving the return of a Bluthner piano.

a.   Breach of the Bukai Properties Operating Agreement[5]

Defendants argue that they had no obligation to repay Irving Faust's monetary contribution because the plain language of the contract states that the amount contributed was an equity investment, and not a loan that they were required to repay.  Defs.' Mem. L. 11.  The dispute centers around the meaning of the term "capital invested."  Plaintiffs argue that the term is ambiguous and consistent with the provision of a loan.  Pls.' Opp. Mem. L. 16.

Section 15.3 of the Operating Agreement provides for interpretation under Connecticut law.  Generally, New York federal courts enforce choice of law provisions contained in contracts.  *RJE Corp. v. Northville Industries Corp.,* 329 F.3d 310 (2d Cir. 2003); *Schiavone Constr. Co. v. City of New York,* 99 F.3d 546, 548 (2d Cir. 1996).  Accordingly, Connecticut law governs the Operating Agreement.

Under Connecticut law, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . ."  *PHL Variable Ins. Co. v. Hersko*, 09 Civ. 1223 (SJ), 2011 WL 3924858, at *3 (E.D.N.Y. Sept. 7, 2011) (quoting *Levine v. Massey,* 654 A.2d 737, 740 (Conn. 1995)) (internal quotation marks

---

[5] Plaintiffs claim that the Operating Agreement, Ex. D, "provides only an incomplete description of the loan."  Pls.' Resp. 56.1 ¶ 4.  Plaintiffs state that "the loan is more completely memorialized" in Exhibits 2 and 3 to Irving Faust's Declaration in Opposition to Summary Judgment and Plaintiffs have made additional investments of capital toward the construction Allegro Pianos' showroom before and after the date of execution of the Operating Agreement.  *Id.* ¶¶ 5, 12.  Exhibits 2 and 3 are e-mails between the parties which Plaintiffs would like the Court to rely upon as parol evidence to the Operating Agreement, not separate loans to Bukai Properties.  *See* Pls.' Opp. Mem. L. 15-17.  As Plaintiffs in their opposition brief discuss the relevant monies invested as being part of one loan, the Court will treat all monies in dispute as pertaining to the Bukai Properties Operating Agreement.  *See id.* at 13-19.

omitted).  If the language is clear and unambiguous, "the contract is to be given effect according

to its terms and resort to parol evidence is not only unnecessary but improper." *Brookridge*

*Funding Corp. v. Nw. Human Services*, 175 F. Supp. 2d 355, 365 (D. Conn. 2001) (quoting *Lee*

*v. Bsb Greenwich Mortgage L.P.,* 267 F.3d 172, 178 (2d Cir. 2001)) (internal quotation marks

omitted).  "Contract language is unambiguous when it has a definite and precise meaning,

unattended by danger of misconception in the purport of the [contract] itself, and concerning

which there is no reasonable basis for a difference of opinion." *Id.* (citations and internal

quotation marks omitted).  Further, a court "will not torture words to import ambiguity where the

ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in the contract

must emanate from the language used in the contract rather than from one party's subjective

perception of the terms." *Hernandez v. Cavaliere Custom Homes, Inc.*, 511 F. Supp. 2d 221, 227

(D. Conn. 2007) (quoting *Lawson v. Whitey's Frame Shop,* 697 A.2d 1137, 1141 (Conn. 1997))

(internal quotation marks omitted).  Also, "[t]he mere fact that the parties advance different

interpretations of the language in question does not necessitate a conclusion that the language is

ambiguous." *PHL Variable Ins. Co.*, 2011 WL 3924858, at *3 (quoting *Goldberg v. Hartford*

*Fire Ins. Co.,* 849 A.2d 368, 373 (Conn. 2004)) (internal citation marks omitted).

 Whether contract language is plain or ambiguous is to be determined by a court as a

matter of law.  *Samowitz v. Homes For Am. Holdings, Inc.*, 05 Civ. 22 (WWE), 2006 WL

1980311, at *2 (D. Conn. July 13, 2006) (citing *Schiavone v. Pearce,* 79 F.3d 248 (2d Cir.

1996)); *Goldberg*, 849 A.2d at 373-74.  In actions involving the interpretation of contractual

language, summary judgment is only appropriate when the contractual language is "wholly

unambiguous when considered in light of the surrounding circumstances and undisputed

evidence of intent." *Brookridge Funding Corp.*, 175 F. Supp. 2d at 365.  The moving party has

the burden of establishing that the contract's language is not susceptible to at least two fairly

reasonable meanings.  If the moving party cannot establish that the contract's language is

unambiguous, a material issue exists as to the parties' intent and the non-moving party may

introduce extrinsic evidence on that issue at trial.  *Id.* at 365-66 (citations omitted).

      Here, according to Plaintiffs, the term "capital invested" is ambiguous and can be

reasonably interpreted as the provision of a loan.  Pls.' Opp. Mem. L. 16.  In support of their

assertion, Plaintiffs urge the Court to consider extrinsic evidence, including definitions on

several investment websites, indicating that loans can sometimes be characterized as investments

of capital.  I. Faust Opp. Decl., ¶¶ 18-21; *id*., Exs. 6-10; Pls.' Opp. Mem. L. 13-19.  Plaintiffs

further argue that the Operating Agreement's provision of 9% interest for Irving Faust's "capital

invested" supports the interpretation that his investment is a loan.  According to Plaintiffs,

"Loans accrue interest.  Equity investments do not – they pay dividends."  Pls.' Opp. Mem. L.

18.  Therefore, Plaintiffs contend that the alleged ambiguity in "capital invested" precludes an

award of summary judgment.

      However, contrary to the Plaintiffs' contention, the language of the Operating Agreement

is definitive and unambiguous.  Under the Operating Agreement, the term "capital invested" is

most reasonably interpreted as investment of equity, and not a loan.  First, the Operating

Agreement explicitly refers to "loans" in several other sections, Nelson Aff., Ex. C §§ 6.3, 8.7,

suggesting that the drafters meant to use the terms consistently with their ordinary meaning.

However, Irving Faust's monetary contribution is not referred to as a "loan," but rather as

"capital invested."  As noted by Defendants, "[i]t is simple:  if Plaintiffs' capital investment was

indeed a loan, Exhibit D would indeed have stated that Plaintiff was *loaning* money to Bukai Properties on that day." Defs.' Reply Mem. L. 4 (emphasis in original). Second, Ori Bukai had an *option*, not an obligation, to purchase Irving Faust's "shares" in Bukai Properties. The contract plainly provides that no member shall have the right to demand or receive a return of their "capital contribution." Nelson Aff., Ex. C § 8.6. At a minimum, a loan requires an obligation by the debtor to repay the money lent. *Es-Tee Realty Co., LLC v. Soumekhian*, 04 Civ. 3482 (CBA), 2006 WL 2860810, at *6 (E.D.N.Y. Sept. 29, 2006), *aff'd*, 323 F. App'x 3 (2d Cir. 2008) (noting that the distinction between a loan and an equity investment is frequently litigated in the tax context and courts have "clearly held" that "[t]he classic debt is an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income or lack thereof.") (citations and internal quotation marks omitted); *see generally Aruba Hotel Enterprises N.V. v. Belfonti*, 611 F. Supp. 2d 203, 213 (D. Conn. 2009). In this case, there is nothing within the four corners of the agreement that requires Ori Bukai to repay Irving Faust the money that he claims to have loaned Bukai pursuant to the Operating Agreement. Accordingly, Defendants' motion for summary judgment dismissing Plaintiffs' claim on the Operating Agreement is GRANTED.[6]

---

[6] Plaintiffs ask the Court to construe the Operating Agreement in conjunction with the June 15, 2007 Sale Agreement whereby Rebecca Faust transferred her interest in Bukai Properites to Irving Faust as they allege that both documents govern the transaction at issue. Pls.' Opp. Mem. L. 15. Specifically, Plaintiffs direct the Court to the description in the Sale Agreement that Irving Faust's consideration for his interest in Bukai Properties was "One ($1.00) Dollar and other valuable consideration," I. Faust Opp. Decl., Ex. 4, and argue that parol evidence should be used to define the meaning of "other valuable consideration." As correctly noted by Defendants, the disputed language in the Sale Agreement is boilerplate contract language. Defs.' Reply Mem. L. 6. *See generally United States v. Gallina*, 97 Civ. 5532 (CBA) (JMA), 2010 WL 6194099, at *2 (E.D.N.Y. Sept. 28, 2010), *report and recommendation adopted*, 97 Civ. 5532 (CBA) (JMA), 2011 WL 976676 (E.D.N.Y. Mar. 15, 2011); *United States v. Laronga*, 89 Civ. 692 (FB), 1998 WL 5408, at *1 (E.D.N.Y. Jan. 6, 1998). Moreover, the Court will not allow introduction of parol evidence that "conflicts with or attempts to modify the plain and unambiguous language of the parties' contract." *Managment Strategies, Inc. v. Hous. Auth. of City of New Haven,* 06 Civ. 075007102S, 2009 WL 1958170, at *7 n.9 (Conn. Super. Ct. June 2, 2009).

b. <u>Unjust Enrichment under the Bukai Properties Operating Agreement</u>

Defendants move for summary judgment on Plaintiffs' sixth cause of action, unjust enrichment, which is based on the failure to repay the alleged monies provided as a loan to Bukai Properties under the Operating Agreement.  SAC ¶¶ 54-59.  Defendants argue that the Operating Agreement governs Plaintiffs' claim and thus precludes recovery under a claim for unjust enrichment.  Defs.' Mem. L. 16.

Under Connecticut law, unjust enrichment applies whenever justice would require compensation to be given for property or services rendered under a contract, and no remedy is available through an action on the contract.  *Alstom Power, Inc. v. Schwing Am., Inc.*, 04 Civ. 1311 (JBA), 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) (citing *Gagne v. Vaccaro,* 766 A.2d 416, 424 (Conn. 2001)).  A "lack of a remedy under a contract is a *precondition* for recovery based on unjust enrichment."  *Id*. (emphasis added).  In other words, unjust enrichment allows a plaintiff to recover the benefit conferred on a defendant where no express contract has been entered into by the parties.  However, "where an express contract exists, restitution for unjust enrichment, a quasi contractual remedy, is unavailable."  *Id.* ("Parties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations.  Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment" (quoting *Lieberman v. Emigrant Mortg. Co.,* 436 F. Supp. 2d 357, 366 (D. Conn. 2006)).

Here, Plaintiffs' unjust enrichment action attempts to recover damages for monies that Plaintiffs assert are covered under the Operating Agreement.  Further, assuming *arguendo* that Defendants have somehow failed to pay dividends or other monies justly owed to Plaintiffs

under the contract, which they have not alleged, the proper remedy would be one for breach of contract and not for unjust enrichment.  *See id.* at *6; *see also OBG Technical Services, Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 513 (D. Conn. 2007); *U.S. Fid. & Guar. Co. v. S.B. Phillips Co., Inc.*, 359 F. Supp. 2d 189, 211 (D. Conn. 2005). Therefore, Plaintiffs cannot recover on an unjust enrichment theory and Defendants motion for summary judgment on this claim is GRANTED.

c.   Return of the Bluthner Piano

As part of their sixth counterclaim, Defendants seek return of the Bluthner piano which FHP, or its agents, currently has in its possession.  Defs.' Mem. L. 8.  In opposition, Plaintiffs allege that FHP received the piano from Allegro Pianos in payment of a debt.  Pls.' Resp. 56.1 ¶¶ 15-17.  In support of their argument, Plaintiffs rely on Irving Faust's affidavit, which states, "I believe that Allegro transferred that piano to FHP as partial payment for sums Allegro owed to FHP.  I base that understanding on an email dated December 17, 2008, in which Mr. Bukai acknowledged that FHP purchased the Bluthner piano from Allegro in early 2008."  Faust Decl. Opp. ¶ 27, Ex. 12.  Plaintiffs also provide a copy of the email, which is written from Ori Bukai to Joshua Faust and states, "[M]y original estimate of the amount Allegro will owe FHP for the sum[a]ry of 06-07 was extremely on the mark, and equal to the cost of a Bluthner 4 that was transferred from [A]llegro to FHP early 08 as a future payment against these expected monies (about 38k)."  I. Faust Decl. Opp., Ex. 12.  Defendants argue that Irving Faust's affidavit is merely speculative because he "*believe[s]*" and does not definitively assert that the Bluthner piano rightfully belongs to Plaintiffs.  Defs.' Reply Mem. L. 9-10.

Mere speculation is insufficient to defeat a motion for summary judgment. *Penfli Indus., Inc. v. Bank of China New York Branch*, 90 Civ. 1115 (RLC), 1990 WL 89339, at *2 (S.D.N.Y. June 19, 1990) (citing *Hansen v. Prentice-Hall, Inc.*, 788 F.2d 892, 894 (2d Cir. 1986) (attorney's affidavit stating that he "believed" that he had notified his client of potentially relevant information was insufficient to raise a genuine issue of material fact)); *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) ("An affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate" (citing *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir. 1972)). However, in support of Irving Faust's belief that Plaintiffs are legitimately in possession of the Bluthner piano, he does not rely on mere speculation, but rather provides documentary proof in the email from Ori Bukai in which Bukai characterizes the transfer of the Bluthner piano as a "future payment" against "expected monies." Drawing all permissible inferences in Plaintiffs' favor, the Court concludes that Plaintiffs raise a genuine issue of material fact regarding the rightful ownership of the piano. Accordingly, Defendants' motion for summary judgment for return of the Bluthner piano is DENIED.

## IV. Plaintiffs' Motion for Summary Judgment

Plaintiffs seek dismissal of Defendants' counterclaims for cancelation of consignment privileges (First Counterclaim), breach of the Sublicense Agreement (Second and Third Counterclaims), breach of the Cessation Agreement (Fourth Counterclaim), tortious interference with contract (Fifth Counterclaim), slander of title (Ninth Counterclaim), and breach of the Boat

Note (Twelfth Counterclaim). Plaintiffs also move for summary judgment as to their breach of contract claim against Defendants for breach of the Boat Loan Agreement (Seventh Claim).[7]

      a.  <u>Cancellation of Consignment Privileges</u>

As part of their first counterclaim, Defendants allege that FHP failed to fund the purchase of Bosendorfer pianos that were the subject of the 2007 and 2008 oral Cooperation Agreements, and that Defendants suffered damages as a result of this breach. Amended Answer ¶¶ 158-59. In their damage disclosures, Allegro Pianos alleges that FHP took actions which caused its supplier of Bosendorfer pianos to cancel Allegro's consignment privileges. I. Faust Decl., Ex. 20. They further allege that notice of these actions was provided in Counterclaim 1 of the Amended Answer. *Id.* In response, Plaintiffs argue, among other things, that Allegro has failed to produce evidence of causation for this breach of contract claim. Pls.' Mem. L. 20-21.

To establish a breach of contract, a plaintiff must prove by a preponderance of the evidence: (1) the existence of a contract between the plaintiff and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) *damages caused to the plaintiff by the defendant's breach. Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). "Causation is an essential element of damages in a breach of contract action; and . . . a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages." *Id.* (citation and internal quotation marks omitted) (emphasis in original); *id.* (citing *Wakeman v. Wheeler & Wilson Manufacturing Co.,* 4 N.E. 264, 266 (N.Y. 1886)). Here, to prove causation, Defendants point to the declaration of Ori Bukai, which states that because FHP did not meet its obligation to

---

[7] Plaintiffs also moved for summary judgment under the Cooperation Agreements (First and Second Claims); however, Plaintiffs acknowledged in their motion papers that Defendants had raised issues of material fact that required resolution at trial. Pls.' Reply Mem. L. 10.

pay for Bosendorfer pianos, Allegro had to cancel a number of pre-ordered pianos.  "This negatively affected Defendant Allegro's relationship with the Bosendorfer manufacturer, and resulted in Allegro losing its consignment privileges with that manufacturer."  O. Bukai Opp. Decl. ¶¶ 26, 29, 79-80.  Aside from Ori Bukai's declaration, which does not set forth facts of which he has personal knowledge and is based on a mere conclusory statement, there is no evidence to substantiate the allegation that FHP's failure to fund the Bosendorfer pianos caused Bosendorfer to terminate Allegro's consignment privileges.  Accordingly, Plaintiffs' motion for summary judgment to dismiss Defendants' first counterclaim is GRANTED.

> b. <u>Breach of the Sublicense Agreement</u>

Plaintiffs seek summary judgment dismissing Defendants' second and third counterclaims which allege that FHP breached the Sublicense Agreement.  Pls.' Mem. L. 16.  According to Plaintiffs, the contract is unenforceable because Allegro Pianos had the power to cancel FHP's right to sell and display pianos "at any time and for any reason," I. Faust Decl, Ex. 10, ¶ 3, and accordingly the contract was illusory and unenforceable for lack of consideration.  Pls.' Mem. L. 16-19.  In response, Defendants allege that Plaintiffs received benefits under the contract and, accordingly, they should be held to their obligations under the agreement.  Defs.' Opp. Mem. L. 27.

Plaintiffs argue that New York law governs the interpretation and enforcement of the Sublicense Agreement, Pls.' Mem. L. 17, and Defendants implicitly agree by relying on New York caselaw in their opposition brief, Defs. Opp. Mem. L. 25-27.  *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to

be applied"); *see also Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (discussing implicit consent to the application of New York caselaw by reliance on New York law in briefs).

Under New York law, courts should avoid a contractual interpretation that renders an agreement illusory and unenforceable for lack of mutuality—i.e., lack of consideration. *See Van Damme v. Gelber*, 24 Misc. 3d 1218(A), at *5-6, 897 N.Y.S.2d 673 (N.Y. Sup. Ct. 2009), *aff'd*, 914 N.Y.S.2d 84 (N.Y. App. Div. 1st Dep't 2010). Moreover, it is "well-settled" that New York courts "will not adopt an interpretation that renders a contract illusory when it is clear that the parties intended to be bound thereby." *Lebowitz v. Dow Jones & Co., Inc.*, 847 F. Supp. 2d 599, 604 (S.D.N.Y. 2012), *aff'd sub nom. Lebowitz v. Dow Jones & Co.*, 12 Civ. 1253, 2013 WL 309996 (2d Cir. Jan. 28, 2013) (citing *Horowitz v. N.Y. Blood Ctr., Inc.,* No. 100382/03, 2003 WL 22287468, at *3 (N.Y. Sup. Ct. Oct. 2, 2003)); *id.* (citing *Qwerty Software, Inc. v. McKinsey & Co.*, No. 601340/02, 2005 WL 2148853, at *2–3 (N.Y. Sup. Ct. July 11, 2005) (dismissing breach of contract claim based on a provision allowing defendant to "terminate the Services at any time, for any or no reason," noting that the "clear, unambiguous terms of the . . . contract cannot be avoided by claims of misunderstanding, or of uneven bargaining power")); *Indep. Asset Mgmt. LLC v. Zanger*, 07 Civ. 6431 (JSR), 2008 WL 2477455, at *3 (S.D.N.Y. June 16, 2008). Furthermore, the absence of mutuality of obligation "may be remedied by the subsequent conduct of the parties." *Ferguson v. Ferguson*, 470 N.Y.S.2d 715, 716 (N.Y. App. Div. 3d Dep't 1983) (citations and internal quotation marks omitted).

Here, the Sublicense Agreement allowed Defendants to terminate the agreement upon ninety days' notice. However, Plaintiffs assert that Defendants considered the agreement

terminated as soon as they sent the April 2, 2009 email and therefore Defendants did not provide

ninety days' notice. Pls.' Mem. L. 18. Without reaching the merits of when FHP's rights under

the contract were terminated, the agreement does in fact provide for ninety days' notice prior to

termination and proper notice was provided to FHP through the May 29, 2009 letter. Moreover,

the parties operated under the agreement for almost seven months prior to April 2, 2009 e-mail,

and during this time FHP received benefits from Defendants under the agreement. *Ferguson*,

470 N.Y.S.2d at 716. Accordingly, Plaintiffs' request for summary judgment on the Sublicense

Agreement is DENIED.

> c.   Breach of the Cessation Agreement[8]

Plaintiffs request summary judgment on Defendants' fourth counterclaim for breach of

the Cessation Agreement. Pls.' Mem. L. 22. Specifically, Plaintiffs argue that the contract fails

because the parties only intended to be bound when they signed the "Summary of a Draft Deal,"

concerning the sharing of territory for the Mason & Hamlin piano line, which was never

executed, and, furthermore, the unsigned agreement fails under the Statute of Frauds because it is

incapable of being performed within one year. Pls.' Mem. L. 22-25. In their interrogatory

responses, when asked to identify all documents relating to the breach of the Cessation

Agreement, Defendants identified the December 23, 2007 email from Irving Faust attaching the

"Summary of a Draft Deal." I. Faust Decl., Exs. 15-16. Accordingly, Plaintiffs allege that

Defendants' breach of contract claim is based on this unsigned agreement. However, Defendants

argue that they are not alleging a breach of the unsigned agreement, but rather a breach of an oral

---

[8] Plaintiffs argue that this claim has a nexus to both New York and Connecticut and accordingly cite to the laws of both states in their papers. Pls.' Mem. L. 23. Defendants do not cite to any legal authority in disputing Plaintiffs' arguments and therefore implicitly agree to the application of New York and/or Connecticut law.

Cessation Agreement between the parties which was "a necessary and material part of the profit sharing agreements for 2007, 2008 and 2009 (which were also oral)." Defs.' Resp. 56.1 ¶¶ 23-26.[9] Further, the declaration of Ori Bukai states that the oral Cessation Agreement "*was very similar* to the one outlined in late 2007 emails between the parties," O. Bukai Opp. Decl. ¶ 85 (emphasis added), and Allegro "substantially performed all its obligations under the Cessation Agreement." *Id*. ¶ 87.

Even if Ori Bukai's declaration "is the only evidence of an oral agreement, summary judgment must nevertheless be denied because this testimony alone is sufficient to create a genuine issue of material fact." *Kramer v. Remley*, 01 Civ. 0303 (RLC), 2002 WL 31323823, at *2 (S.D.N.Y. Oct. 16, 2002) (citing *Ventures, Ltd. v. Shane,* 112 F.3d 54, 58 (2d Cir.1997) (holding that the plaintiff's affidavit alone, which the district court found 'decidedly vague,' created a genuine issue of fact as to the existence of an oral contract)); *Mormile v. Metro. Life Ins. Co.*, CV000598778, 2001 WL 577071, at *3 (Conn. Super. Ct. May 8, 2001) ("The existence of a contract is, at least initially, a question of fact" (quoting *Simmons v. Simmons,* 708 A.2d 949, 963 (1998)). Moreover, "[c]redibility assessments and choices between conflicting versions of events are matters for a jury, not for the court on summary judgment." *Kramer*, 2002 WL 31323823, at *3 (citation omitted).

As to Plaintiffs' Statute of Frauds argument, a contract may be enforceable, despite the statute of frauds, when subsequent to the making of the contract, a party has engaged in conduct that amounts to part performance. *Cavendish-Pell v. Howell*, Civ. 960153146, 2000 WL 281647, at *3 (Conn. Super. Ct. Mar. 3, 2000); *see also ESI, Inc. v. Coastal Corp.*, 61 F. Supp.

---

[9] The Court notes that the Cooperation Agreements discussed by Defendants are the Cooperation Agreements which Plaintiffs have already admitted raise material issues of fact.

2d 35, 76 (S.D.N.Y. 1999) ("Suffice it to say, equity will not countenance a ritualistic invocation of the Statute of Frauds, especially where the party claiming its protection has acquiesced in and profited from the very agreement it now seeks to abjure" (quoting *Brockport Developers, Inc. v. 47 Ely Corp.,* 369 N.Y.S.2d 601, 607-08 (N.Y. Sup. Ct. 1975)).  Here, Defendants allege that they have substantially performed their obligations under the Cessation Agreement, O. Bukai Opp. Decl. ¶ 87, and Plaintiffs do not address this assertion in their papers.  Accordingly, there is a genuine issue of fact concerning the existence of the oral cessation contract and, if the agreement falls within the Statute of Frauds, there is an issue of fact as to whether part performance on the oral agreement was sufficient to remove it from the Statute of Frauds.  Accordingly, Plaintiffs' motion for summary judgment to dismiss Defendants' claim of breach of an oral Cessation Agreement is DENIED.

       d.  <u>Tortious Interference with Contract</u>

Plaintiffs seek dismissal of Defendants' fifth counterclaim for tortious interference with a contract between Allegro Pianos and the Joseph Brodmann Group, granting Allegro Pianos exclusive rights to sell Brodmann pianos in Connecticut and Manhattan.  Amended Answer ¶ 190; Pls.' Mem. L. 26.  Plaintiffs argue that Defendants cannot prove that FHP engaged in improper conduct in relation to Allegro Pianos' agreement.  Pls.' Mem. L. 26.

Both parties agree the dispute is governed by New York law.  "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.' " *Kirch*

*v. Liberty Media Corp.,* 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.,* 668 N.E.2d 1370, 1375 (N.Y. 1996)).  Here, the only issue in dispute is the third element:  whether, construed most favorably to Defendants, the evidence proffered is sufficient to raise a genuine issue of material fact that any breach procured by Plaintiffs was without justification.

Plaintiffs argue that Defendants cannot prove that Plaintiffs improperly induced Brodmann to terminate its relationship with Allegro Pianos.  Pls.' Reply Mem. L. 8.  In response, Defendants only point to Ori Bukai's declaration, which states, "Allegro asserts that FHP contacted Brodmann, and made statements to Brodmann representatives that caused Brodmann to terminate its longstanding relationship with Allegro."  O. Bukai Opp. Decl. ¶ 133.  As noted by Plaintiffs, this declaration does not say what the statements were, and does not assert that Ori Bukai had personal knowledge of what FHP said to Brodmann.  Pls.' Reply Mem. L. 8.  Bukai's testimony is merely speculative and therefore insufficient to defeat summary judgment.

Plaintiffs further argue that Defendants cannot base a tortious interference of contract claim on an allegation that Joshua Faust told Brodmann that Plaintiffs had sued Defendants for over $1,000,000.00 dollars.  *Id.*  Defendants assert that "[t]his statement was made to imply to Brodmann that Allegro was headed for financial insolvency as a result of a million dollar lawsuit."  Defs.' Opp. Mem. L. 31 (citing *Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*, 06 Civ. 662 (GBD), 2006 WL 2254818, at *4 (S.D.N.Y. Aug. 7, 2006) (statements have been found to be defamatory per se where they falsely indicate that a company is insolvent)).  However, it is not reasonable to infer a charge of insolvency from a mere statement that litigation was pending.  Unreasonable inferences are insufficient to defeat a motion for summary

26

judgment.  *Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp.*, 03 Civ. 1414 (MP), 2003 WL 22966285, at *1 (S.D.N.Y. Dec. 16, 2003) (a court need not "credit unsupported factual allegations and innuendos," "nor make unreasonable inferences from circumstantial evidence proffered by [the] nonmovant.") (citations and internal quotation marks omitted).  As noted by Defendants, "[a] company sued for $1,000,000.00 can still be solvent, or might win the suit and never have to pay."  Defs.' Opp. Mem. L. 8.  Accordingly, Defendants have failed to show that there is a material issue of fact with respect to Plaintiffs' intentional procurement of breach of the Brodmann contract without justification.  Plaintiffs' request to dismiss Defendants' fifth counterclaim is GRANTED.

     e.  <u>Slander of Title</u>

     Plaintiffs ask the Court to dismiss Defendants' ninth counterclaim for slander of title against the real estate of Bukai Properties because Allegro Pianos has failed to provide a calculation of its damages as required under Fed. R. Civ. P. 26(a)(1)(A)(iii).  Pls.' Mem. L. 27-28.  Accordingly, Plaintiffs argue that they are entitled to summary judgment dismissing Defendants' claims for actual and consequential damages and limiting Defendants to nominal damages of one dollar.  *Id.* at 28-29.

     In New York, a claim for slander of title requires:  (1) that a defendant made "a communication falsely casting doubt on the validity of [plaintiff's] title, (2) reasonably calculated to cause harm, and (3) resulting in special damages."  *39 College Point Corp. v. Transpac Capital Corp.,* 810 N.Y.S.2d 520, 521 (N.Y. App. Div. 2d Dep't 2006) (internal citation marks omitted).  Special damages are a prerequisite for the claim, and failure to plead special damages will result in dismissal of an action at the summary judgment stage.  *Chamilia,*

*LLC v. Pandora Jewelry, LLC*, 04 Civ. 6017 (KMK), 2007 WL 2781246, at *12 n.8 (S.D.N.Y. Sept. 24, 2007); *see generally Kirschner v. Klemons*, 99 Civ. 4828 (RCC), 2004 WL 1234050, at *6 (S.D.N.Y. June 2, 2004).

Here, Plaintiffs do not argue that Defendants can prove no special damages at trial; i.e., they do not argue, as Rule 56 requires, that there is no genuine dispute as to any material fact concerning this claim. Rather, they complain about Defendants' failure to abide by their disclosure obligations under Rule 26. In support of their argument, Plaintiffs rely exclusively on *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485 (S.D.N.Y. 2009), a case where counterclaimants on summary judgment were prohibited from asserting actual and consequential damages for their breach of contract claim because they had failed to provide a damage computation as required by Rule 26(a)(1)(A)(iii). *Id.* at 490-91; Pls.' Mem. L. 28-29; Pls.' Reply Mem. L. 9. However, the court did not dismiss the claim because the counterclaimants might still be entitled to recover nominal damages. *Id.* at 490-91. Here, on a claim for slander of title, nominal damages do not appear to be available and thus the *Gould* case is inapposite outside the breach of contract context. Further, Plaintiffs have not provided the Court with any legal authority that a Rule 56 motion for summary judgment is an appropriate vehicle to impose what are essentially discovery sanctions. The Court expresses no opinion as to whether a motion for sanctions would be appropriate on the facts. However, because Plaintiffs have not established as a matter of law that Defendants have raised no issue of material fact on their claim of slander of title, their motion is DENIED.

28

f.   Breach of the Boat Loan Agreement and the Boat Note

Finally, Plaintiffs request summary judgment on their claim for breach of the Boat Loan

Agreement (Seventh Claim) and on Defendants' related counterclaim for failure of payment

under the Boat Note (Twelfth Counterclaim).  Pls.' Mem. L. 8, 27.[10]  Defendants admit that they

executed the Boat Loan Agreement but claim that the contract was voided and superseded with a

new oral agreement whereby the parties would become equal owners of the boat, as evidenced

by the Boat Note.  Defs.' Opp. Mem. L. 2, 32-33.

Under New York and Connecticut law, a written contract may be modified by subsequent

oral agreement if it does not contain a provision prohibiting oral change.  *Regent Partners, Inc. v.*

*Parr Dev. Co., Inc.*, 960 F. Supp. 607, 615 (E.D.N.Y. 1997), *aff'd*, 131 F.3d 131 (2d Cir. 1997);

*Suresky v. Sweedler*, Civ. 065003255S, 2010 WL 2105617, at *6 (Conn. Super. Ct. Apr. 9,

2010).  The Boat Loan Agreement contains no such provision.  "Whether a contract or a

subsequent modification exists is a question of fact for the court to determine."  *Suresky*, 2010

WL 2105617, at *6 (quoting *Saye v. Howe*, 886 A.2d 1239, 1244 (Conn. App. Ct. 2005))

(internal quotation marks omitted); *In re Actrade Fin. Technologies, Ltd. Sec. Litig.*, 02 Civ.

1263 (RMB) (HBP), 2012 WL 3966328, at *3 (S.D.N.Y. Sept. 11, 2012) ("Summary judgment

is improper where 'there exist genuine issues of material fact with respect to whether the parties

reached an oral agreement'" (quoting *Consarc Corp. v. Marine Midland Bank, N. A.*, 996 F.2d

568, 577 (2d Cir. 1993)); *Northstar Erectors, Inc. v. Hackensack Steel Corp.*, 08 Civ. 10092

(CM), 2010 WL 2891169, at *1 (S.D.N.Y. July 19, 2010) (denying summary judgment where

---

[10] Plaintiffs state that the boat loan claim has a nexus to both New York and Connecticut and accordingly cite to the
law of both states in their motion papers.  Pls.' Mem. L. 10.  Plaintiffs cite to New York law when discussing
Defendants' counterclaim under the Boat Note.  *Id.* at 27.  Defendants do not cite to any legal authority in their
opposition to Plaintiffs' arguments under the Boat Loan Agreement or the Boat Note.  Defs.' Mem. L. 23-24, 32-33.
Accordingly, the Court will look to the laws of New York and Connecticut when addressing the boat dispute.

there were material issues of act whether the parties made an oral agreement to modify a contract).   However, oral modifications to written contracts must be proved by clear and convincing evidence, such as "contemporaneous documentary support."  *GSB Technologies, Inc. v. Martitime Holdings Int'l, Inc.*, 01 Civ. 11256 (NRB), 2004 WL 2724228, *3 n.5 (S.D.N.Y. Nov. 30, 2004); *see R.B. Ventures, Ltd.,* 112 F.3d at 58 (holding that the plaintiff's affidavit alone, which the district court found 'decidedly vague,' created a genuine issue of fact as to the existence of an oral contract); *Three Sixty Five (365) Cherry LLC v. Siseman, LLC*, (FST) Civ. 096001196S, 2010 WL 1611326, at *3 (Conn. Super. Ct. Mar. 18, 2010).

Plaintiffs argue that the check from Rebecca Bukai to Irving Faust of October 16, 2005, with a notation at the bottom of the check stating "For boat loan interest:  2004 & 2005" is evidence that the Boat Loan Agreement was not voided.  Pls.' Mem. L. 12.  However, Defendants argue that Rebecca Bukai made the notation at her father's explicit direction.  R. Bukai Decl. ¶¶ 33, 36; Defs.' Opp. Mem. L. 3.  As evidence that the Boat Loan Agreement was terminated and that a new oral agreement was entered into, Defendants rely on the statements of Ori Bukai, O. Bukai Opp. Decl. ¶¶ 111-119, and Rebecca Bukai, R. Bukai Decl. ¶¶ 33-34, as well the Boat Note dated March 10, 2004 and signed by Irving and Sara Faust and Ori and Rebecca Bukai as "co-borrowers."  Ori Bukai Opp Decl, Ex. 11.  According to the Boat Note, Irving and Sara Faust are "equally liable for repayment of [the] loan."  *Id*., Ex. 11 at 3.  Construed most favorably to the Defendants, the evidence presented raises genuine issues of material fact as to whether Irving Faust waived Defendants' obligations under the Boat Loan Agreement and whether the parties created a new oral agreement to act as co-owners and co-borrowers of a boat.

30

Moreover, summary judgment is precluded by the Defendants' counterclaim, seeking, *inter alia*, damages for Plaintiffs' alleged breach of the Boat Note (Amended Answer ¶ 40), which is inextricably interwoven with and inseparable from the issues raised by Plaintiffs in their Second Amended Complaint. *Gemstones, Inc. v. Union Carbide Corp.*, 391 N.E.2d 987 (N.Y. 1979) (dismissing summary judgment on counterclaims as the counterclaims directly related to a main cause of action in the plaintiff's case). Accordingly, Plaintiffs' motion for summary judgment on the Boat Loan Agreement is DENIED and Plaintiffs' motion for summary judgment on Defendants' counterclaim under the Boat Note is also DENIED.[11]

## V.  Stay of Enforcement

Finally, Defendants ask the Court to stay the enforcement of any final judgment until the remaining claims are decided at trial. Defs.' Opp. Mem. L. 33-34. Pursuant to Fed. R. Civ. P. 62(h), a motion for partial stay of enforcement of a judgment is appropriate when a court orders entry of a final judgment which does not reflect all of the claims made by all parties in the case as provided by Fed. R. Civ. P. 54(b) (governing judgment on multiple claims involving multiple parties). The purpose of a Rule 62(h) partial stay is to "preserve the status quo pending

---

[11] Plaintiffs also argue that they would be prejudiced if the Court were to allow Defendants to assert waiver of the obligations under the Boat Loan Agreement as a defense. Pls.' Mem. L. 13-15. Specifically, Plaintiffs argue that Defendants did not formally put Plaintiffs on notice of their theory of forgiveness of the Boat Loan Agreement until May 22, 2012, when Defendants submitted a letter to the Court opposing Plaintiffs' pre-motion conference letter. Pls.' Mem. L. 13. However, Plaintiffs acknowledge that "[t]he first time [D]efendants suggested [that] Mr. Faust forgave the loan was at the deposition of Ori Bukai, on October 24, 2011. Harwood Decl. ¶ 6. At that deposition Mr. Bukai testified that Mr. Faust "ripped up" the loan agreement . . . ," *id.*, and Plaintiffs' attorney had the opportunity to cross-examine him. For example:

> Q. So you're -- so when did Irving tear up the agreement?
>
> A. When we made the other agreement. As I said before, February 2004, give or take a little bit. Could be March. Now that I have this in front of me I can see that this loan list was dated March 2004, March 10, so apparently my timing is quite on the money.

I. Faust Decl., Ex. 5, Transcript of October 24, 2011 Deposition of Ori Bukai, 102:3-16.

disposition of other claims, counterclaims, cross-claims, or third-party claims for relief in the same action." 3 Motions in Federal Court § 9:91 (3d ed.).  In opposition, Plaintiffs correctly point out that under Rule 54(b), an adjudication of fewer than all claims is non-final unless a court specifically so directs, and only if the court expressly determines that there is no just reason for delay.  Fed. R. Civ. P. 54(b); Pls.' Reply Mem. L. 10.  Here, the Court has not directed an entry of final judgment as to any claims, in either motion for summary judgment.  Accordingly, it is premature at this juncture to stay the enforcement of final judgment under Rule 62(h).

## VI. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  Specifically, the Court

GRANTS summary judgment for Defendants as to Plaintiffs' claim for breach of the Operating Agreement (Fifth Claim);

GRANTS summary judgment for Defendants on Plaintiffs' claim for unjust enrichment (Sixth Claim); and

DENIES summary judgment for Defendants on their counterclaim for return of the Bluthner piano (Sixth Counterclaim).

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part.  Specifically, the Court

GRANTS summary judgment for Plaintiffs on Defendants' counterclaim for cancellation of consignment privileges (First Counterclaim);

DENIES summary judgment for Plaintiffs on Defendants' counterclaim for breach of the Sublicense Agreement (Second and Third Counterclaims);

DENIES summary judgment for Plaintiffs on Defendants' counterclaim for breach of the Cessation Agreement (Fourth Counterclaim);

GRANTS summary judgment for Plaintiffs on Defendants' counterclaim for tortious interference with contract (Fifth Counterclaim);

DENIES summary judgment for Plaintiffs on Defendants' counterclaim for slander of title (Sixth Counterclaim);

DENIES summary judgment for Plaintiffs on Defendants' counterclaim for breach of the Boat Note (Twelfth Counterclaim); and

DENIES summary judgment for Plaintiffs on their claim for breach of the Boat Loan Agreement (Seventh Claim).

The Clerk's Office is respectfully directed to terminate the pending motions. Docs. 130, 150, 160. The parties are to appear for a pre-trial conference on April 25, 2013 at 2:30 p.m., at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated: March 28, 2013
        White Plains, New York

Edgardo Ramos, U.S.D.J.